UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Rhonda Morris McNeely, | ) | C/A No. 6:24-cv-7374-JDA-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Sonya Hale, Keith Cagle, William Thompson, Charles Holman, Jay Graves, | ) | |
| | ) | |
| Defendants. | ) | |

Presently before the Court is Defendants' Motion to Dismiss (ECF No. 18). Plaintiff, proceeding *pro se*, brings this civil action against the above-named Defendants alleging employment discrimination. Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the district court. For the reasons below, Defendants' Motion to Dismiss should be granted.

**BACKGROUND**

**Procedural History**

Plaintiff commenced this action by filing a Complaint against Defendants on December 18, 2024. ECF No. 1. On April 28, 2025, Defendants filed an Answer to the Complaint. ECF No. 14. Defendants filed a Motion to Dismiss the Complaint for failure to state a claim on May 20, 2025. ECF No. 18. That same day, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (a "*Roseboro* Order"), advising Plaintiff of the motion to dismiss procedures and the possible consequences if she failed to respond adequately. ECF No.

1

19. On June 25, 2025, Plaintiff filed a Response in Opposition to the Motion to Dismiss. ECF No. 21. Defendants filed a Reply on July 2, 2025. ECF No. 23. This Motion is ripe for review.

**Factual Allegations**

Plaintiff makes the following allegations in the Complaint. ECF No. 1. Plaintiff brings this case alleging discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.* at 4.[1] *Id.* Plaintiff asserts the following discriminatory conduct: failure to promote, retaliation, and constructive dismissal. *Id.* at 5. Plaintiff asserts these actions took place from May to July 2024. *Id.* As to the protected class, Plaintiff alleges she suffered discriminated based on her gender/sex, which she identifies as "Female." *Id.*

---

[1] Plaintiff also refers to the Electronic Communications Privacy Act ("ECPA") and S.C. Code § 17-30-30, Interception of Wire, Electronic or Oral Communications. ECF No. 1 at 4. However, the Complaint does not appear to assert any standalone claims for violations of the ECPA or South Carolina statute. And courts have noted that a plaintiff is "unable to bring both an employment discrimination complaint and a separate unrelated complaint for stalking/harassment/invasion of privacy in the same lawsuit." *Thurman v. Rug Dr.*, C/A No. 4:23-cv-659 SPM, 2023 WL 6121214, at *3 (E.D. Mo. Sept. 19, 2023), *appeal dismissed*, No. 23-3662, 2024 WL 1230234 (8th Cir. Jan. 25, 2024), *cert. denied*, 144 S. Ct. 2540 (2024), *reh'g denied*, 145 S. Ct. 105 (2024). To the extent that Plaintiff alleges a claim under the ECPA, she has failed to state sufficient facts that would entitle her to relief. In order for the interception of an oral communication to be actionable under the ECPA, a plaintiff must establish three elements: "(1) a willful interception of an oral communication by a device; (2) the communication must have been uttered by a person who exhibited an expectation that it would not be intercepted; and (3) the communication must have been uttered under circumstances that justified the expectation." *Kemp v. Block*, 607 F. Supp. 1262, 1264 (D. Nev. 1985) (citing *United States v. Carroll*, 337 F. Supp. 1260, 1262 (D. D.C. 1971)); *see also Wall v. NSB E. Bonanza LLC*, C/A No. 2:20-cv-00391-RFB-DJA, 2022 WL 526133, at *5 (D. Nev. Feb. 22, 2022). Plaintiff has not alleged facts to make such a showing. The South Carolina statute cited by Plaintiff—S.C. Code § 17-30-30—provides "it is lawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception." Thus, this statute provides that "South Carolina is a one-party consent state," and Plaintiff has not alleged facts showing a violation of that statute. *TELECO, Inc. v. Mutolo*, C/A No. 6:23-cv-03563-DCC, 2025 WL 1654613, at *12 (D.S.C. June 10, 2025).

According to Plaintiff, she began employment with Foxwood Hills Property Owners' Association ("Foxwood Hills") on July 10, 2023, and was promoted twice within the first six months of employment. *Id.* at 6. Plaintiff expressed interest in being considered for a General Manager position that became available in May 2024. *Id.* The General Manager at the time informed Plaintiff that the Board was not going to hire her. *Id.* Plaintiff discussed the promotion with Board President Sonya Hale ("Hale"), who informed Plaintiff that she would not be considered for the position due to her "temperament" and because Plaintiff was "too important" in her current role. *Id.* Plaintiff submitted her resume to the Board, along with several references from well-respected committee chairpersons. *Id.* Plaintiff was scheduled for an interview with Hale and Keith Cagle ("Cagle") on June 6, 2024, which was cancelled fifteen minutes before the scheduled interview time. *Id.* Plaintiff was informed the Board had decided to offer Jay Graves ("Graves") the interim General Manager position. *Id.* Hale asked Plaintiff to train Graves for the position. *Id.* Plaintiff refused to do so. *Id.* Plaintiff contends that "[r]etaliation began shortly thereafter." *Id.*

According to Plaintiff, Graves began audio taping Plaintiff's office and listening to private conversations without Plaintiff's consent. *Id.* Graves began questioning Plaintiff's actions in her office in a very threatening/angry voice that he "overheard" through a closed door, causing Plaintiff to have a panic attack at work. *Id.* Graves had a volatile shouting match with another department manager, causing Plaintiff to have another panic attack and leave work for the day. *Id.* Plaintiff requested a meeting with the Board of Directors regarding Graves' intimidating behavior. *Id.* Plaintiff met with the Board Secretary and Board Treasurer to discuss her concerns on July 16, 2024, at which time Charles Holman ("Holman"), the Board Treasurer, acknowledged the Board was aware that Graves was audio recording Plaintiff's office. *Id.* The Board chose to keep Graves

3

in his interim position, which left Plaintiff no choice but to leave her job under terms of a constructive dismissal. *Id.* Plaintiff contends the workplace had become so intolerable that she had no choice but to leave for her own safety and sanity. *Id.* Plaintiff alleges that the Board chose not to pay Plaintiff one week of earned vacation because she did not give a two-week notice. *Id.* Plaintiff contends she has suffered emotional duress and incurred medical bills. *Id.* For her relief, Plaintiff seeks lost wages, lost vacation time, and punitive damages. *Id.* at 7.

As to the exhaustion of her administrative remedies, Plaintiff alleges that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 20, 2024. *Id.* at 6. Plaintiff asserts the EEOC issued a Notice of Right to Sue Letter on December 16, 2024. *Id.* Plaintiff has attached a copy the Notice to her Complaint. ECF No. 1-1. That notice was signed on September 18, 2024. *Id.* at 5.

## STANDARD OF REVIEW

**Liberal Construction of *Pro Se* Pleadings**

Because Plaintiff is a *pro se* litigant, the pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the *pro se* pleading remains subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for her, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim

4

cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**Motion to Dismiss Standard**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 531 (D.S.C. 2014) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 8(a) sets forth a liberal pleading standard, which requires only a "short and plain statement of the claim showing the pleader is entitled to relief, in order to give the defendant fair notice of what ... the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). "In assessing the sufficiency of a complaint, [the court] assume[s] as true all its well-pleaded facts and draw[s] all reasonable inferences in favor of the plaintiff." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). "[T]he facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## DISCUSSION

Defendants have filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim for relief. ECF No. 18. Defendants argue that (1) Plaintiff cannot state a valid Title VII claim against the individual named Defendants; (2) Plaintiff

5

cannot state a valid Title VII claim against Foxwood Hills, even if it were a named Defendant; (3) Plaintiff fails to allege facts sufficient to state a claim; (4) Plaintiff fails to meet the elements for discriminatory failure to promote; (5) Plaintiff fails to meet the elements for retaliation under Title VII; and (6) Plaintiff fails to meet the elements for constructive discharge due to a hostile work environment. *Id*. The Court addresses these arguments in turn below.

**The Named Defendants**

Plaintiff's claims arise from purported discrimination relating to Plaintiff's employment with Foxwood Hills. Plaintiff has not named Foxwood Hills as a Defendant and, instead, names various Foxwood Hills Board Members—Hale, the Board President; Cagle, the Board Vice President; Thompson, the Board Secretary; Holman, the Board Treasurer; as well as Graves, the Interim General Manager of Foxwood Hills. Defendants argue that they cannot be liable as individual Defendants for Title VII claims. ECF No. 18 at 3. In her Response, Plaintiff argues that her intent "is to sue the Board of Directors as the governing body of [Foxwood Hills], and that [Foxwood Hills] and the Board are one and the same for the purposes of this suit." ECF No. 21 at 3. Plaintiff contends that, "[as] officers of the Association, empowered with the authority to conduct the business of the Association, Plaintiff believes that the body, through their actions, did, in fact, violate Title VII provisions relating to discrimination." *Id*. at 1. Plaintiff's contentions are unavailing, and the Court finds that the named Defendants, who are all individuals, cannot be sued under Title VII.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a). "Only persons who qualify as employers within the meaning of 42 U.S.C. § 2000e(b) are liable under

Title VII." *Lissau v. S. Food Servs., Inc.*, 159 F.3d 177, 178, 181 (4th Cir. 1998). Title VII defines employer "as a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such a person." 42 U.S.C. § 2000e(b). Therefore, employees and supervisors are not liable in their individual capacities for Title VII violations. *Lissau,* 159 F.3d at 178, 181; *Wright v. Stonemor Partners LLP*, C/A No. 3:12-cv-380, 2012 WL 4006120, at *1–2 (W.D.N.C. Sept. 12, 2012).

Plaintiff has not alleged facts which show that any one of the individual Defendants was her employer. Therefore, the named Defendants in their individual capacities are all entitled to dismissal from this action for Plaintiff's claims of employment discrimination. *See Hightower v. Shoes*, C/A No. 6:20-cv-03959-DCC-JDA, 2021 WL 5911347, at *2 (D.S.C. Jan. 5, 2021), *R&R adopted by* 2021 WL 1169142 (D.S.C. Mar. 26, 2021).

Plaintiff's argument is, in essence, an assertion that the individual Defendants are liable as Board Members and that her claim is really against the Board. Even if the Board is the real party in interest as to Plaintiff's claims, the individual Board Members are not liable themselves in their official capacities. *See Pettis v. Nottoway Cnty. Sch. Bd.*, C/A No. 3:12-cv-864-HEH, 2013 WL 3063704, at *6 (E.D. Va. June 17, 2013) (finding the plaintiff's claims against the individual defendants in their official capacities as school board members "are essentially claims against the Board, which is the real party in interest"). "[Plaintiff] may not maintain Title VII claims against . . . the individual Board members in their official capacities for the simple reason that such claims are duplicative of her Title VII claim against the [Foxwood Hills] Board." *Walton v. Sch. Bd. of Gloucester Cnty.*, C/A No. 4:06-cv-75, 2006 WL 3838235, at *4 (E.D. Va. Dec. 4, 2006); *see also Sizemore v. Sw. Va. Reg'l Jail Auth.*, C/A No. 1:08-cv-00035, 2009 WL 396115, at *6 (W.D. Va. Feb. 17, 2009) (dismissing Title VII suit against individual board members and noting that "[w]hile

the *Lissau* case dealt with supervisory liability, in the sense that the defendant was a former supervisor of the plaintiff, the reasoning applied by the Fourth Circuit would extend to such 'Board Members'"), *R&R adopted by* 2009 WL 674383 (W.D. Va. Mar. 12, 2009).  Thus, all of the individual Defendants are entitled to dismissal.

**Foxwood Hills**

Plaintiff has not named Foxwood Hills as a Defendant, nor has she named the Board. However, even if she had named Foxwood Hills and/or the Board, her claims are subject to dismissal because she has not alleged facts showing her employer—Foxwood Hills—has fifteen or more employees, which is a requirement for Title VII liability.  *See Briggs v. T & D Plumbing & Heating Co.*, C/A No. WDQ-10-cv-2714, 2011 WL 3798227, at *3 (D. Md. Aug. 24, 2011) ("[A] *prima facie* Title VII employment discrimination claim requires the plaintiff to allege that the defendant employer has at least 15 employees.").  One court has explained as follows:

> An employer must exceed a threshold of fifteen employees for each working day in twenty or more calendar weeks during the current or preceding calendar year in order to be subject to the relevant provisions of Title VII.  42 U.S.C. § 2000e(b).  Employers with less than fifteen employees are considered exempt from Title VII's requirements.  *Depaoli v. Vacation Sales Associates, L.L.C.,* 489 F.3d 615, 622 (4th Cir. 2007).  Because Title VII does not apply to all employers, "the threshold number of employees for application of Title VII is an element of a plaintiff's claim." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516 (2006).  The fifteen employee requirement is an essential element of every employment discrimination claim under Title VII.

*Sturdivant v. K & S Sanitation Serv., Inc.*, C/A No. 3:11-cv-136-RJC-DSC, 2011 WL 5037194, at *3 (W.D.N.C. May 13, 2011), *R&R adopted by* 2011 WL 5237747 (W.D.N.C. Oct. 24, 2011). Because "Plaintiff failed to allege that [Foxwood Hills] regularly employed fifteen (15) or more employees and therefore failed to allege that [Foxwood Hills] was an 'employer' within the

meaning of Title VII," the Complaint must be dismissed.[2] *Graham v. Carolina Blankets Inc.*, C/A No. 3:22-cv-00271-KDB-DCK, 2023 WL 1481546, at *2 n.1 (W.D.N.C. Feb. 2, 2023).

In response to Defendants' Motion to Dismiss, Plaintiff does not dispute that Foxwood Hills does not employ fifteen or more employees. ECF No. 21 at 1. Instead, Plaintiff argues that this requirement "is waived by virtue of the Employee Handbook which provides that the Association will hold itself to the standards set forth in Title VII with no disqualifying stipulation mentioned in the handbook related to the number of employees of the Association." *Id*. Plaintiff's contention is without merit. First, Plaintiff's Complaint is devoid of any reference to the employee handbook, and Plaintiff has not attached to her Complaint a copy of that handbook or any employment contract. The Court also does not consider matters outside the Complaint on a motion to dismiss. *See Ballentine v. Three T Towing, LLC*, C/A No. 5:17-cv-00056-RJC-DSC, 2018 WL 1569869, at *3 (W.D.N.C. Mar. 7, 2018) (declining to consider the parties' submitted evidence outside the pleadings as to the number of employees during the relevant period and finding "none of this evidence can be considered in evaluating Plaintiff's claims under Rule 12(b)(6)"), *R&R adopted by* 2018 WL 1567355 (W.D.N.C. Mar. 30, 2018).

Second, any indication in the Foxwood Hills' employee handbook that the employer would hold itself to the standards set forth in Title VII does not constitute a waiver of the statutory requirements for a prima facie claim of employment discrimination. Plaintiff has not identified— and the Court cannot find—any case law suggesting that an employer's voluntary compliance with the standards of Title VII constitutes a waiver of the employee numerosity requirement in the

---

[2] The Supreme Court of the United States has explained that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). Thus, Plaintiff's claims should be dismissed for failing to state a claim for relief.

statute. Indeed, such a position would undermine certain policy considerations of Title VII. *See Hubbard v. Rubbermaid, Inc.*, 436 F. Supp. 1184, 1189 (D. Md. 1977) (noting that, under the statutory policy of Title VII, "plaintiffs should not have an unrestrained ability to litigate allegations of discrimination which are neither contained in the EEOC charge nor investigated by the EEOC, thereby frustrating the statutory scheme of informal persuasion and voluntary compliance"). Further, courts have noted that "[b]ecause the numerosity requirement is an element of the plaintiff's Title VII claim rather than an affirmative defense, [an employer] may challenge this deficiency . . . at the summary judgment stage even though it had not previously raised this argument." *Olvera-Morales v. Int'l Lab. Mgmt. Corp.*, C/A No. 1:05-cv-00559, 2008 WL 53293, at *8 (M.D.N.C. 2008).

Because Plaintiff has not alleged that her employer met the fifteen employee numerosity requirement of Title VII, the Complaint should be dismissed for failing to allege a necessary element of her claim. *White* v. *American Fed'n of State Cnty. & Gov't Emps. Union Loc. 2250*, C/A No. DKC 23-3161, 2024 WL 3161589, at *4 (D. Md. June 25, 2024) (dismissing a Title VII claim because the plaintiff failed to allege that the defendant employer had more than 15 employees) (collecting cases). Indeed, although the Court understands Plaintiff's employer to have been Foxwood Hills, Plaintiff has not actually named her employer, let alone alleged that Foxwood Hills employed more than fifteen employees. *Morrow v. Keystone Builders Res. Grp., Inc.*, C/A No. 2:08-cv-4119-CWH-RSC, 2009 WL 6859004, at *3 (D.S.C. July 17, 2009) (dismissing Title VII claims because the plaintiff failed to "actually name and identify the employer" and did not allege that her employer met the fifteen employee requirement), *R&R adopted by* 2010 WL 3672354 (D.S.C. Sept. 15, 2010).

Because the individual Defendants are not proper parties under Title VII and because Plaintiff has failed to allege facts showing Foxwood Hills is an employer under the definition of Title VII, Plaintiff's claims are subject to dismissal. The Court, however, will briefly address Defendants' remaining arguments.

**Failure to State a Claim**

Defendants argue that Plaintiff has failed to allege facts to support a claim for relief as to any of her three asserted claims of failure to promote, retaliation, and constructive discharge. ECF No. 18 at 3–6.

*Failure to Promote*

Defendants argue Plaintiff has failed to meet the elements for a claim of discriminatory failure to promote. ECF No. 18 at 4. Defendants assert that Plaintiff applied for the General Manager and/or interim General Manager position and quit before that position was filled, and an interim was put in place while the General Manager interviews were ongoing. *Id*. Defendants contend that Plaintiff does not allege that male and female applicants existed for the General Manager role and does not allege that she was not promoted because she was female. *Id*.

To establish a prima facie claim of discriminatory failure to promote under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1973), a plaintiff must established "that '(1) plaintiff is a member of a protected group; (2) plaintiff applied for the position in question; (3) plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.'" *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994) (quoting *McNairn v. Sullivan*, 929 F.2d 974, 977 (4th Cir. 1991)).

In her Response in Opposition to the Motion to Dismiss, Plaintiff asserts that she "is a female and disabled, which is two protected groups under Title VII." ECF No. 21 at 1. The

Complaint contains no allegations that Plaintiff is disabled. Her argument that she belongs to that protected class is not supported by the allegations in the Complaint. However, Plaintiff alleged that she is female, which is a protected class. ECF No. 1 at 5. Plaintiff also alleged that she applied for the interim General Manager position, a fact that Defendants do not contest. *Id*. at 6. Plaintiff further alleged that she was promoted twice within her first six months of employment and submitted several references "from well-respected committee chairpersons." *Id*. Thus, although the Complaint does not expressly allege that Plaintiff was qualified for the position, her allegations, liberally construed, assert that she was qualified. Defendants do not appear to contest this element. Accordingly, the first three elements are satisfied.

Plaintiff has not, however, alleged facts showing she was rejected for the General Manager position under circumstances giving rise to an inference of unlawful discrimination. Plaintiff alleges that the General Manager informed her that the Board was not going to hire her. *Id*. Plaintiff contends that Hale stated she "would not be considered due to [her] 'temperament'" and because she "was 'too important' in [her] current role." *Id*. The Complaint, however, does not contain any allegations suggesting that Plaintiff was denied a promotion on the basis of her sex. Plaintiff argues that, based on prior interactions with Hale, she "inferred that Mrs. Hale considered Plaintiff as an 'emotional woman' and therefore not suitable for the position." ECF No. 21 at 2. Plaintiff made no such allegation in the Complaint. Nor can the Court infer such from the allegations presented. "The ultimate issue is still whether Plaintiff was not selected because of her gender, which Plaintiff has failed to illustrate in this case." *Maness v. City of High Point, N.C.*, C/A No. 1:17-cv-384, 2018 WL 6031191, at *9 (M.D.N.C. Nov. 16, 2018), *R&R adopted by* 2018 WL 10733608 (M.D.N.C. Dec. 21, 2018), *aff'd*, 771 F. App'x 289 (4th Cir. 2019). Accordingly, the Court finds the facts alleged in the Complaint are inadequate to state a plausible claim for

discriminatory failure to promote. *Foster v. Wiedefeld*, C/A No. MJM-22-cv-3034, 2024 WL 4349724, at *6 (D. Md. Sept. 30, 2024) (dismissing a failure to promote claim where the plaintiff did not "offer any other facts to support an inference that he was denied the appointment based on his sex").

### *Retaliation*

Defendants argue Plaintiff has failed to meet the elements for a claim of retaliation under Title VII. ECF No. 18 at 5. Defendants contend Plaintiff has not alleged any protected activity in which she engaged and instead alleges that she complained about her workplace conditions. *Id*. Defendants argue such allegations are related to a constructive discharge claim but not a retaliation claim. *Id*. Defendants assert that Plaintiff did not file an EEOC complaint until after she quit her job and that no adverse employment action is alleged. *Id*.

Employers are prohibited under Title VII from retaliating against an employee for reporting discrimination in the workplace. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *see also* 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires a plaintiff to establish "(1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (citation omitted). An adverse action sufficient to sustain a retaliation claim is one that "a reasonable employee would have found [to be] materially adverse," that is, sufficient to dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2005). The required causal link between an employee's protected activity and an employer's adverse action can be established "by 'show[ing] that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the

13

protected activity,' or a combination of the two." *Laurent-Workman*, 54 F.4th at 218–19 (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)).  The employer must also have actual awareness of the plaintiff's engagement in protected activity.  *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006).

Here, Plaintiff has failed to allege facts establishing any element for a retaliation claim.  In the Complaint, Plaintiff alleges that "[r]etaliation began shortly []after" Plaintiff refused to train Graves in the position for which Plaintiff was denied an opportunity to interview.  ECF No. 1 at 6.  In her Response in Opposition to the Motion to Dismiss, Plaintiff argues that she "opposed unlawful practices, which encompassed speaking out against discriminatory or harassing conduct."  ECF No. 21 at 2.  Plaintiff explains that she attempted to discuss with various Board members about Graves' various unprofessional conduct and hostile actions.  *Id*.

As to the first element, Plaintiff has not identified any protected activity.  *Johnson v. Glob. Language Ctr.*, No. 21-1638, 2023 WL 3645055, at *4 (4th Cir. May 25, 2023) ("Protected activity is essential to a successful Title VII-retaliation claim.  It is the first ingredient in a prima facie showing of unlawful retaliation.").  The only activities alleged in the Complaint are Plaintiff's refusal to train Graves and her verbal complaints about Graves' conduct.  These are not protected activities.[3]  *See, e.g., Bowman v. Baltimore City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016) ("General complaints of unfair treatment are not protected activity.").  Also, Plaintiff has not alleged facts showing her activities were in response to or in opposition to any perceived unlawful conduct by her employer.  *Liggins v. G.A. & F.C. Wagman, Inc.*, C/A No.

---

[3] Protected activities "fall into two distinct categories: participation or opposition."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).  Participation activities are those outlined in the statute: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII."  *Id.*

5:18-cv-38, 2019 WL 4039635, at *4 (W.D. Va. Aug. 27, 2019) ("The anti-retaliation provision of Title VII does not protect employees unless they reasonably believe the conduct they oppose is unlawful.").

As to the second element, Plaintiff has not alleged facts showing she suffered any adverse action in retaliation for her alleged protected activities. *See Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) (noting vague references to threatening and intimidating meetings and emails do not sufficiently allege that an adverse employment action was taken against the plaintiff); *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (finding the plaintiff's allegations that "he was yelled at for complaining about his discriminatory treatment" and that "the school threatened to officially reprimand him if he sent more complaining e-mails to administrators" were not materially adverse employment actions); *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 784 (D. Md. 2010) (finding a supervisor's "demeaning and belittling remarks," as well as the supervisor undermining plaintiff's authority in front of his subordinates, insistence that the plaintiff "needlessly perform arbitrary and time-consuming tasks," and failure to promote the plaintiff were not adverse employment actions).

Finally, "regarding the third element, [Plaintiff] has not linked any of the alleged protected activity to any of the alleged adverse actions from a causation standpoint." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 215 (4th Cir. 2019). Plaintiff has failed to allege facts to establish any of the required elements for a retaliation claim under Title VII. Accordingly, Defendants are entitled to dismissal of Plaintiff's claims for retaliation.

*Constructive Discharge*

Defendants argue that Plaintiff has not alleged facts to establish a claim for constructive discharge. ECF No. 18 at 6. According to Defendants, Plaintiff "does not allege that anyone sought to make her quit her job" and "does not allege conduct that was sufficiently severe or pervasive." *Id*. Defendants contend Plaintiff has failed to show that the hostile environment was directed in a harsher manner toward Plaintiff because she was a female than any conduct towards males. *Id*.

"A constructive discharge occurs when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job.'" *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (quoting *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984)). Two elements are required: "deliberateness of the employer's action, and intolerability of the working conditions." *Id*. "Deliberateness exists only if the actions complained of 'were intended by the employer as an effort to force the employee to quit.'" *Id*. A constructive discharge may form the basis for a wrongful discharge action, even though an employee may have technically resigned. *Rivero v. Umberto's Italian Rest., Inc.*, C/A No. PWG 13-cv-2392, 2015 WL 5667177, at *3 (D. Md. Sept. 23, 2015). "In order to prove constructive discharge, a plaintiff must prove that conditions were so intolerable that a reasonable person would have felt compelled to resign." *Green v. The Wills Group, Inc.,* 161 F. Supp. 2d 618, 626 (D. Md. 2001). Intolerable conditions are often associated with "egregious personal harassment." *Diamond v. T. Rowe Price Assoc., Inc.,* 852 F. Supp. 372, 398 (D. Md. 1994).

In the Complaint, Plaintiff alleges that Graves was audio taping Plaintiff's office and listening to private conversations without her consent. ECF No. 1 at 6. Plaintiff contends Graves questioned her actions in a "threatening/angry voice" that caused Plaintiff to have a panic attack.

*Id*. Plaintiff asserts that "Graves had a volatile shouting match with another department manager that caused [Plaintiff] to have another panic attack." *Id*. Plaintiff requested a meeting with the Board of Directors to discuss Graves' intimidating behavior. *Id*. After a meeting with Board Members, the Board chose to keep Graves in the interim position, "which left [Plaintiff] no choice but to leave [her] job under the terms of constructive dismissal." *Id*. In her Response in Opposition to the Motion to Dismiss, Plaintiff argues that she was "the victim of a crime on a daily basis by having her office audio recorded without her knowledge or consent" and that she was "confronted in a hostile manner over noises from her office that could not be heard without the aid of said listening device." ECF No. 21 at 2. Plaintiff contends that these events qualify as making working conditions intolerable. *Id*.

The Court finds that "the circumstances here seem to be in line with, or fall short of, what the Fourth Circuit has rejected for constructive discharge claims." *Franovich v. Hanson*, 687 F. Supp. 3d 670, 688 (D. Md. 2023). The United States Court of Appeals for the Fourth Circuit explained as follows:

> [D]ifficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign. For example, in *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004), we held that being yelled at and told you are a poor manager and chastised in front of customers did not create conditions so intolerable as to compel a reasonable person to resign. In *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 273 (4th Cir. 2001), we held that ostracization and required counseling for turning in an inaccurate time card did not make the workplace intolerable. In *Munday v. Waste Management of North America*, 126 F.3d 239, 244 (4th Cir. 1997), we held that being ignored by co-workers and top management was insufficient to establish constructive discharge. And in *Carter v. Ball*, 33 F.3d 450, 459–60 (4th Cir. 1994), we held that being unfairly criticized, losing supervisory responsibilities, and having one's supervisor display a poster that may have been offensive to African Americans was insufficient to establish constructive discharge.

17

*Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019).

Plaintiff alleges two incidents wherein Graves' alleged conduct resulted in Plaintiff having a panic attack. ECF No. 1 at 6. In the first instance, Plaintiff alleges that Graves questioned her actions in a "very threatening/angry voice." *Id*. In the second instance, Plaintiff alleges that she overheard Graves engaged in a "volatile shouting match with another department manager." *Id*. These two isolated incidents, one of which did not even involve Plaintiff, are insufficient to establish a pervasive hostile working environment that created conditions so intolerable as to compel a reasonable person to resign. *See Evans*, 936 F.3d at 193 ("[W]hen the conduct is isolated or infrequent, it is less likely to establish the requisite intolerability."); *Bouknight v. S.C. Dep't of Corr.*, 487 F. Supp. 3d 449 (D.S.C. 2020) (finding allegations of a male supervisor's allegedly angry, insulting, humiliating, and berating conduct toward a female employee was not sufficiently severe and pervasive to support the employee's Title VII constructive discharge claim).

Plaintiff's allegations are insufficient to plausibly establish a constructive discharge claim. Accordingly, Plaintiff's constructive discharge claim should be dismissed.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss (ECF No. 18) be **GRANTED**.

**IT IS SO RECOMMENDED**.

s/William S. Brown
United States Magistrate Judge

September 24, 2025
Greenville, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Suite 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).